**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **STEVEN JAY SENCIAL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-3054** |
| **JOSEPH LOPINTO, III, ET AL.** | **SECTION "E" (5)** |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment filed by Defendants Joseph P. Lopinto, III, Sheriff of Jefferson Parish, and Jefferson Parish Sheriff's Office ("JPSO") employees Sergeant Steven Rabb and Officer Kevin Smith. Defendants seek summary judgment on all claims this pro se Plaintiff asserts against them under 42 U.S.C. § 1983.[1] Plaintiff filed an Opposition and a Supplemental Opposition,[2] and Defendants filed a Reply.[3] At a status conference, Defendants informed the Court of ongoing discovery issues and requested leave to file supplemental memoranda. The Court granted leave,[4] after which Defendants filed a Supplemental Memorandum,[5] and Plaintiff filed a Response.[6]

## BACKGROUND

This action arises from Plaintiff's incarceration as a pretrial detainee at the Jefferson Parish Correctional Center ("JPCC").[7] Plaintiff asserts Fourteenth Amendment due process claims against all Defendants in their individual capacities, and against Sheriff Lopinto in his official capacity, alleging the conditions of his confinement and the

---

[1] R. Doc. 46.
[2] R. Doc. 52; R. Doc. 53.
[3] R. Doc. 51.
[4] R. Doc. 58.
[5] R. Doc. 60.
[6] R. Doc. 64.
[7] R. Doc. 4-2 at pp. 1-3.

episodic acts or omissions of the Defendants amounted to unconstitutional punishment.[8] Specifically, Plaintiff alleges Defendants deprived him of adequate exercise and outdoor recreational yard time, and that the deprivation was severe enough to violate his Fourteenth Amendment rights.[9]

On December 16, 2025, Defendants filed the instant Motion for Summary Judgment, seeking summary judgment on Plaintiff's § 1983 claims.[10] Defendants argue Plaintiff failed to exhaust his administrative remedies as to the first grievance he filed, and the other conduct of the Defendants did not violate Plaintiff's constitutional rights.[11]

## LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] "An issue is material if its resolution could affect the outcome of the action."[13] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[14] "All reasonable inferences are drawn in favor of the nonmoving party."[15] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[16]

---

[8] *Id.* at pp. 2-3. The Plaintiff mentions *Monell* liability in his Opposition to Defendants' Motion for Summary Judgment. R. Doc. 53 at p. 2. This is not sufficient to plead a cause of action under *Monell.*
[9] R. Doc. 4-2 at pp. 6-7.
[10] R. Doc. 46.
[11] *Id.*
[12] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[13] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[14] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).
[15] *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[16] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

If the dispositive issue is one for which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[17] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[18]

On the other hand, if the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[19] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[20] When, however, the

---

[17] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

[18] *Celotex*, 477 U.S. at 322-24.

[19] *Id.* at 331-32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322-24, and requiring the Movers to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (5th Cir. 1987) (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

[20] *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

3

movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[21] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[22] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[23] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[24]

Still, "unsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[25]

---

[21] *Celotex*, 477 U.S. at 332-33.

[22] *Id.*

[23] *Id.* at 332-33 n.3.

[24] *Id.* at 332 n.3; *see also First Nat'l Bank of Ariz.*, 391 U.S. at 289.

[25] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (first citing *Celotex*, 477 U.S. at 324; then *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994); and then quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

## LAW AND ANALYSIS

I.   **The JPSO was put on notice of the claims asserted in Plaintiff's first grievance and had an opportunity to address them and, as a result, Plaintiff exhausted his administrative remedy with respect to his first grievance.**

Defendants seek summary judgment that Plaintiff failed to exhaust available administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), with respect to his first grievance.[26] As a result, they argue Plaintiff is barred from recovering damages for the conduct he alleges occurred from May 25, 2022, the day he entered the JPCC, through September 15, 2022, when he filed his second grievance.[27]

The PLRA provides "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[28] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[29] The Supreme Court has described the PLRA exhaustion provision as a "mandatory exhaustion" statute and has "reject[ed] every attempt to deviate ... from its textual mandate."[30] The Fifth Circuit has taken a strict approach to the exhaustion requirement.[31] The Fifth Circuit has held

---

[26] R. Doc. 46-1 at pp. 12-13.

[27] *Id.* at p. 6.

[28] 42 U.S.C. § 1997e(a).

[29] *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).

[30] *Ross v. Blake*, 578 U.S. 632,639-40 (2016); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.") (*citing Porter*, 534 U.S. at 524).

[31] *Wilson v. Epps*, 776 F.3d 296, 299-300 (5th Cir. 2015) (quoting *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010) ("[P]risoners must not just substantially comply with the prison's grievance procedures, but instead must 'exhaust available remedies properly.'").

exhaustion must have occurred before the lawsuit is filed,[32] and that "[w]hen a defendant asserts the defense of lack of exhaustion, the district court should rule on [the exhaustion] issue before allowing the case to proceed to the merits."[33]

Nevertheless, the Fifth Circuit has emphasized that a grievance is sufficient, even if not administratively exhausted, if it puts officials on notice of the alleged conduct that a plaintiff later relies on in a lawsuit.[34] "[A] grievance should be considered sufficient [to exhaust administrative remedies] to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit."[35] Moreover, the Fifth Circuit has explained that the purpose of the exhaustion requirement is not to create a demanding hurdle for plaintiffs to clear before they can bring suit; it is to provide administrators with an opportunity to address a prisoner's complaints internally before the dispute reaches the litigation stage.[36] When a pre-trial detainee has exhausted some, but not all of the claims asserted in the complaint, only the unexhausted claims are dismissed, not the complaint as a whole.[37]

The Defendants provided a Supplemental Statement of Uncontested Material Facts in Support of Motion for Summary Judgment.[38] The following statements are taken from Defendants' supplemental statement of undisputed facts and the first, second, and third grievances filed by the Plaintiff, and the Defendants' responses thereto, which are attached to the supplemental statement.[39]

---

[32] *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) ("[T]he case must be dismissed if available administrative remedies were not exhausted.").
[33] *Nottingham v. Finsterwald*, 582 Fed. Appx. 297, 297-98 (5th Cir. 2014) (citing *Dillon*, 596 F.3d at 272-73).
[34] *Johnson v. Johnson*, 385 F.3d 503, 516-19 (5th Cir. 2004).
[35] *Id.* at 517-19.
[36] *See* id. at 518.
[37] *Jones v. Brock*, 549 U.S. 199, 221 (2007).
[38] R. Doc. 60-1.
[39] R. Docs. 60-4, 60-5, and 60-6.

6

The JPCC has a grievance procedure designed to provide speedy and effective administrative remedies for inmate grievances in compliance with federal and state law.[40] The procedure is explained in a policy entitled Inmate Rules, Regulations, & All Procedures which is provided to inmates incarcerated at the JPCC.[41] The policy also contains written guidelines describing expected inmate behavior and the discipline that may be imposed for violations.[42]

The grievance procedure is a two-step process.[43] The respondent has 30 days to respond to a grievance. [44] If no timely response to the grievance is received by the inmate, the request for review must be made within five days after expiration of the 30-day time limit for a response.[45] If the inmate does receive a timely response to the grievance, an inmate may request review by the Correctional Administrator.[46] The request must be received by the Correctional Administrator or his designee within five days of the inmate's receipt of the initial response.[47]

Plaintiff entered the JPCC on May 25, 2022.[48] On July 19, 2022, Plaintiff filed his first grievance alleging he lacked access to outdoor recreational yard time.[49] In the summary of his grievance, Plaintiff complained that "it has been several weeks since I had an armband. I still have not received an armband. I have been denied my privileges due to facility procedure more than three weeks [illegible] yard causing me unjust punishment

---

[40] R. Doc. 60-1 at p. 1, ¶ 1. The Inmate Grievance Procedure is in the record at Doc. 60-2.
[41] *Id.* at pp. 1-2, ¶ 2. The Inmate Handbook is in the record at Doc. 60-3.
[42] *Id.* at pp. 1-2, ¶ 2.
[43] *Id.* at p. 2, ¶ 3 .
[44] A respondent has 30 days to respond to the complaint. R. Doc. 60-3 at p. 19.
[45] R. Doc. 60-1 at p. 2, ¶ 3.
[46] *Id.*
[47] *Id.*
[48] *Id.* at p. 2, ¶ 4.
[49] *Id.* at p. 2, ¶ 5. The Plaintiff's initial grievance is in the record at Doc. 46-6 and Doc. 60-4.

to my rights as an inmate."[50] In this grievance, Plaintiff complains of his lack of access to outdoor recreational yard time for several weeks prior to July 19, 2022. On August 17, 2022, Plaintiff received a response authored by Sergeant Silbernagel, who determined the grievance was unfounded.[51] Sergeant Silbernagel stated that the Plaintiff "rolled into facility on 05-25-2022 at which time you were issued an armband. You were placed on suicide watch on 06-24-2022, at which time your armband was probably removed. You were released from the infirmary on 07-07-2022, back to general population. On 07-25-2022 you were issued a replacement armband. This Grievance was received on 07-27-2022. I spoke with the pod officer currently working your pod, they informed me that you currently have an armband on your person."[52] Plaintiff did not fill out the portion of the Response to Grievance form requesting administrative review of the response.[53]

On September 15, 2022, Plaintiff filed a second grievance alleging a lack of yard access.[54] In this grievance, Plaintiff stated, "I have not received yard privileges since medical and am constantly refused by Rabb and other officers and even threatened by Rabb. I am not allowed to use fingernail clippers nor have I seen the sun in 4 months this is a sedentary life style."[55] The initial response, authored by Sergeant Rabb, determined the second grievance was unfounded.[56] On September 28, 2022, Plaintiff requested administrative review of that decision.[57] On October 18, 2022, the second response, authored by Captain Bryan Bordelon, determined Plaintiff's grievance was founded.[58]

---

[50] R. Doc. 60-4 at p. 1.
[51] R. Doc. 60-1 at p. 2, ¶ 6; R. Doc. 60-4 at p. 2.
[52] R. Doc. 60-4 at p. 2.
[53] R. Doc. 60-1 at p. 2, ¶ 7.
[54] *Id.* at pp. 2-3, ¶ 8. The Plaintiff's second complaint is in the record at R. Doc. 46-7 and R. Doc. 60-5.
[55] R. Doc. 46-7 and R. Doc. 60-5.
[56] R. Doc. 60-1 at p. 3, ¶ 9; R. Doc. 46-7 at p. 2 and R. Doc. 60-5 at p. 2.
[57] R. Doc. 60-1 at p. 3, ¶ 9; R. Doc. 46-7 at p. 7 and R. Doc. 60-5 at p. 7.
[58] R. Doc. 60-1 at p. 3, ¶ 9 .

Captain Bordelon found "There are two extended periods of time after you were removed from suicide watch where you were not issued a new armband. This prevented you from attending the recreation yard on numerous occasions due to not having an armband."[59] According to the documents and emails provided by the Defendants, the two extended periods during which Plaintiff was denied recreation yard privileges are July 5, 2022 until July 25, 2022[60] (20 days)[61] and August 19, 2022 until September 15, 2022 (27 days).[62]

Defendants do not seek summary judgment that Plaintiff failed to exhaust administrative remedies as to all grievances filed. Rather, Defendants seek summary judgment that Plaintiff failed to exhaust available administrative remedies with respect only to his first grievance. The Defendants argue this failure bars Plaintiff's recovery of damages for conduct allegedly occurring from May 25, 2022, when he entered the JPCC, through September 15, 2022, when Plaintiff filed his second grievance.[63]

To obtain summary judgment that Plaintiff failed to exhaust his administrative remedies with respect to his first grievance, Defendants must show "there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law."[64] Because exhaustion is an affirmative defense, Defendants bear the burden of demonstrating that Plaintiff "failed to exhaust available administrative remedies."[65] As a result, to carry their summary judgment burden, Defendants must submit evidence that,

---

[59] R. Doc. 46-7 at p. 8; 60-5 at p. 8.
[59] R. Doc. 46-1 at 3, ¶ 9. R. Doc. 46-7 and R. Doc. 60-5 at p. 8.
[60] R. Doc 60-4 at p. 2.
[61] R. Doc. 60-5 at p. 3-4.
[62] *Id.*
[63] R. Doc. 46-1 at p. 6.
[64] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[65] *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).

if uncontroverted, would entitle them to a directed verdict at trial that Plaintiff failed to exhaust available administrative remedies as to his first grievance.

In support of their Motion, Defendants submitted Plaintiff's first grievance and the administrator's response.[66] Plaintiff does not dispute that he failed to seek administrative review of the first grievance, and that fact is confirmed by copy of the grievance and initial response submitted by Defendants.[67] The Response to Grievance reflects that Plaintiff did not request administrative review.[68]

Plaintiff's second grievance filed on September 15, 2022 informed the Defendants of the conduct Plaintiff objected to and that Plaintiff claimed he had not seen the sun for *four months*, a period that covers conduct back to when Plaintiff entered the JPCC on May 25, 2022.  On October 18, 2022, the JPSO's second response to the second grievance, authored by Captain Bryan Bordelon, found the second grievance founded and recognized that there had been *two* extended periods of time after Plaintiff was removed from suicide watch when he was not issued a new armband and that this prevented him from attending the recreation yard on numerous occasions--July 5, 2022 until July 25, 2022 (20 days) [69] and August 19, 2022 until September 15, 2022 (27 days).[70]

The Defendants were aware of and took the opportunity, when reviewing Plaintiff's second grievance, to address the allegations in his first grievance concerning Plaintiff's lack of access to the outside recreational yard after his removal from his first suicide watch. The administrators did not treat Plaintiff's second grievance as being only about conduct beginning on August 19, 2022, when he was removed from his second suicide

---

[66] R. Doc. 60-4.
[67] *Id.*
[68] R. Doc. 46-6 at p. 2.
[69] R. Doc 60-4 at p. 2; 60-5 at p. 3.
[70] R. Doc. 60-5 at p. 3.

watch, but rather acknowledged that they were aware his second grievance complained about two separate denials of access to outdoor recreation time: one beginning July 5, 2022 when Plaintiff came off his first suicide watch *and* a second beginning August 19, 2022 when he came off his second suicide watch. The JPSO investigated and responded to the second grievance accordingly looking past the technical defect of failure to exhaust the first grievance and, in effect, determining the first grievance was founded as to all conduct beginning on July 5, 2022 and ending on July 25, 2022 and the second grievance was founded as to all conduct beginning on August 19, 2022 and ending on September 15, 2022. In his response to the second grievance, Captain Bordelon recognized there had been two extended periods of time after Plaintiff was removed from suicide watch when he was not issued a new armband which prevented him from attending the recreation yard on numerous occasions[71]—the period covered by the first grievance and the period covered by the second grievance.

Prison administrators cannot argue that a "prisoner's grievance failed to comply with procedural rules when the officials had looked past the purported technical defect and rejected the grievance for substantive reasons."[72] In this case, the JPSO prison administrators were aware that Plaintiff's first and second grievances concerned two extended periods when he was denied access to the outside recreation yard and they addressed both periods of time in response to the second grievance. Accordingly, the review of and response to Plaintiff's second grievance satisfies the purpose of the administrative exhaustion requirement—to ensure officers have notice of Plaintiff's claims and an opportunity to address them before litigation commences—with respect to

---

[71] R. Doc. 60-5 at p. 8.
[72] *See Johnson*, 385 F.3d at 520 (citing *Gates v. Cook*, 376 F.3d 323, 331 & n.6 (5th Cir. 2004).

11

both his first and second grievances.[73]  Because exhaustion is an affirmative defense, Defendants bear the burden of demonstrating that Plaintiff "failed to exhaust available administrative remedies."[74] As a result, to carry their summary judgment burden, Defendants must submit evidence that, if uncontroverted, would entitle them to a directed verdict at trial that Plaintiff failed to exhaust available administrative remedies as to his first grievance. The Defendants have failed to meet this burden because the evidence shows that JPSO had notice of, and an opportunity to address, Plaintiff's first grievance. The Defendants' motion for summary judgment that Plaintiff failed to exhaust administrative remedies as to his first grievance will be denied.[75]

## II.     Disputed issues of fact exist with respect to the conditions of confinement claims against Sheriff Lopinto in his official capacity and against Sergeant Rabb and Officer Smith in their individual capacities.

Plaintiff, a pretrial detainee, brings conditions of confinement claims under § 1983 against Sheriff Lopinto in his official capacity and against Sergeant Rabb and Officer Smith in their individual capacities. Plaintiff does not bring a conditions of confinement claim against Sheriff Lopinto in his individual capacity. In the Fifth Circuit, conditions of confinement claims are cognizable against officials in their individual capacities only if the defendant is personally involved in the challenged conditions.[76] Plaintiff did not allege or ague Sheriff Lopinto was personally involved in denying him outdoor recreation.

---

[73] *See Johnson*, 385 F.3d at 516-19.

[74] *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).

[75] Even if the Defendants had not been aware of and addressed Plaintiff's first grievance when responding to the second grievance, Defendants would not be entitled to summary judgment. Plaintiff has established there are genuine issues of disputed fact with respect to whether an exception excuses Plaintiff's failure to exhaust his first grievance because the remedy was not available. The Plaintiff argues in his Opposition to Defendant's Motion for Summary Judgment that the denial of his access to recreational yard time was "punitive and retaliatory for grievances" and attaches his own declaration which includes a statement that there was "Retaliation by Deputy Rabb (self-review of grievances about himself)."

[76] *See Borchgrevink v. Harris Cnty., Texas*, No. 4:23-CV-03198, 2025 WL 2774777, at *2 n.4 (S.D. Tex. Sept. 30, 2025) (citing *Brown v. McLane*, 807 F. App'x 410, 411 (5th Cir. 2020)).

"[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause."[77] While the state may punish those convicted of crimes—so long as such punishment is neither cruel nor unusual—the state cannot punish pretrial detainees because they have not yet been convicted of a crime.[78] For this reason, "[t]he constitutional rights of a pretrial detainee flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment[,]" and not the Eighth Amendment.[79] Pretrial detainees may assert Fourteenth Amendment due process claims under two alternative theories: (1) challenging the legality of a condition of confinement or, (2) challenging episodic acts or omissions of prison officials.[80] The Court first examines Plaintiff's claims challenging conditions of his confinement that denied him the right to regular outdoor recreation.

Inmates have no protected liberty interest in specific recreational opportunities and the "[d]eprivation of exercise is not a per se constitutional violation."[81] "[W]hat is constitutionally required, however, is that [the pretrial detainee] not be confined for long periods without the opportunity for regular physical exercise."[82] Accordingly, to succeed

---

[77] *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996).
[78] *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).
[79] *Cleveland v. Gautreaux*, 198 F.Supp.3d 717, 733 (M.D. La. 2016) (citing *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999)).
[80] *Id.* (quoting *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009)).
[81] *Lewis v. Smith*, 277 F.3d 1373, 2001 WL 1485821, at *1 (5th Cir. 2001).
[82] *Id.*

on this claim at trial, Plaintiff must establish he was deprived of outdoor recreational yard time for a sufficiently long period of time and the deprivation caused him actual injury.[83]

In the "Declaration of Steven Jay Sencial," which Plaintiff submitted as an attachment to his supplemental memorandum in opposition to Defendant's motion for summary judgment, Plaintiff declares he was repeatedly denied requests for recreation, and he suffered emotional and physical injury.[84] In terms of his physical harm, Plaintiff alleges he suffered "extreme pain" and injuries from remaining sedentary.[85]

The Supreme Court in *Bell v. Wolfish* established the analysis for pretrial detainee conditions of confinement claims.[86] In that case, the Supreme Court held the government may "detain [an individual] to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution."[87] "[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees."[88]

In *Hare v. City of Corinth*, the Fifth Circuit clarified that the *Bell* "reasonably related" test applies to conditions of confinement claims.[89] The Fifth Circuit has gone on to specify that, to successfully bring a conditions of confinement claim, a plaintiff must prove: (1) "a rule or restriction or. . . the existence of an identifiable intended condition or practice. . . [or] that the jail official's acts or omissions were sufficiently extended or

---

[83] *Laue v. Gusman*, 2014 WL 3733002, at *10 (E.D. La. 2014).
[84] R. Doc. 53-1.
[85] R. Doc. 4-2 at p. 4.
[86] *Bell v. Wolfish*, 441 U.S. 520, 539 (1979).
[87] *Id.* at pp. 536–37.
[88] *Id.* at pp. 539.
[89] *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644 (5th Cir. 1996).

pervasive; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of [plaintiff's] constitutional rights."[90] When evaluating a conditions of confinement claim, the state's or municipality's intent to punish is presumed because a "State's imposition of a rule or restriction during pretrial confinement manifests an avowed intent to subject a pretrial detainee to that rule or restriction."[91] As a result, "even where a State may not want to subject a detainee to inhumane conditions of confinement or abusive jail practices, its intent to do so is nevertheless presumed when it incarcerates the detainee in the face of such known conditions and practices.[92] Accordingly, Plaintiff is not required to demonstrate that the state actor or municipality had the intent to punish him.[93]

When a plaintiff asserts a claim challenging conditions of confinement, the inmate challenges the "general conditions, practices, rules, or restrictions of pretrial confinement."[94]  Plaintiff alleges he was denied his constitutional right "to be free from cruel and unusual punishment, as protected by the Eighth and Fourteenth Amendments."[95] "These conditions, practices, rules, and restrictions can be explicit, such as 'the number of bunks per cell, mail privileges, disciplinary segregation, etc.'"[96] However, "[a] formal, written policy is not required to establish a 'condition or practice.'"[97] A condition also may "reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or

---

[90] *Duvall v. Dallas Cnty.*, 631 F.3d 203, 207 (5th Cir. 2011).
[91] *Hare*, 74 F.3d at 644.
[92] *Id.*
[93] *Id.*
[94] *Id.*
[95] R. Doc. 4-2 at p. 6.
[96] *Reed v. Wichita Cnty.*, 795 F.3d 456, 462 (5th Cir. 2015) (citing *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009)).
[97] *Montano v. Orange Cnty., Texas*, 842 F.3d 865, 875 (5th Cir. 2016).

pervasive misconduct by [jail] officials, to prove an intended condition or practice.'"[98] A pervasive pattern of acts or omissions claim may be established with "consistent testimony of jail employees' or with reports, affidavits, and other documentary evidence."[99] In *Montano v. Orange County*, the Fifth Circuit found that jail employees holding detoxifying detainees in a special cell for as long as necessary until they detoxed constituted a *de facto* policy, even though the formal written policy limited the detoxification period to between four and eight hours.[100]

"[C]onfinement conditions may be constitutionally inadequate if, when viewed in combination, they have a 'mutually enforcing effect that produces the deprivation of a single, identifiable human need."[101] In *Miller v. Carson*, the Fifth Circuit recognized that exercise is one such identifiable human need, stating that "presumably innocent pretrial detainees who are not classified as security risks and who have not been shown to have violated the disciplinary rules of the jail have a [F]ourteenth [A]mendment and 1983 right to regular access" to outdoor exercise.[102] However, the Fifth Circuit has since held that prisons are not necessarily required to allow pretrial detainees to exercise outdoors.[103] Instead, the Fifth Circuit has stated that courts should evaluate deprivation of exercise claims "on a case-by-case basis using, inter alia, the following criteria: (1) the size of the inmate's cell; (2) the amount of time the inmate spends locked in his cell each day; and

---

[98] *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 645 (5th Cir. 1996)).
[99] *Baqer v. St. Tammany Par. Gov't*, No. CV 20-980, 2025 WL 948167, at *7 (E.D. La. Mar. 28, 2025).
[100] 842 F.3d 865, 875 (5th Cir. 2016).
[101] *Sanchez v. Young Cnty.*, 956 F.3d 785, 795 (5th Cir. 2020)(quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).
[102] 563 F.2d 741, 750 (5th Cir. 1977).
[103] *Mayfield v. Ellett*, 102 F.3d 549 (5th Cir. 1996) ("we are quite certain that [*Miller*] does not confer a constitutional right to exercise in *unfiltered* sunlight in an otherwise acceptable custodial facility regardless of the facility's physical constraints.").

16

(3) the overall duration of the inmate's confinement."[104] In *Mayfield v. Ellett*, the Fifth Circuit held that, because a prison allowed a detainee to exercise regularly in a "dayroom" and a gymnasium, the prison did not violate the plaintiff's right to exercise even though it did not allow Plaintiff outdoor recreation.[105]

To avoid violating a pretrial detainee's constitutional rights, a policy, or pervasive acts reflecting a de facto policy, must be (1) rationally related to a legitimate governmental purpose, and (2) not be excessive in relation to that purpose.[106] If policies or pervasive acts are arbitrary or purposeless, they are not rationally related to a legitimate purpose.[107] "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test of the validity of jail rules."[108] Courts should consider "the totality of the circumstances" of a detainee's confinement, such as the size of the inmate's cell and the inmate's ability to exercise indoors, in determining whether a prison policy is reasonably related to a legitimate purpose or is excessive.[109] A "lack of funds is not a sufficient justification for neglect of a citizen's constitutional rights."[110] While this is a deferential standard, courts in this circuit have declined to dismiss conditions of confinement claims when disputed issues of fact existed with respect to a policy's legitimacy. In *Martinez v. Harris County Jail*, the Fifth Circuit found a prison failed to state a legitimate government interest for imposing restrictions on an inmate when it provided no evidence to justify the necessity of the restrictions.[111] In addition, in *Burns v. Smith*, the United States District Court for

---

[104] *Hewitt v. Henderson*, 271 F. App'x 426, 428 (5th Cir. 2008).
[105] *Mayfield*, 102 F.3d 549.
[106] *Bell v. Wolfish*, 441 U.S. 520, 539 (1979); *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009).
[107] *Bell*, 441 U.S. at 539.
[108] *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 646 (5th Cir.1996).
[109] *Ferguson v. Cape Girardeau Cnty.,* 88 F.3d 647, 650 (8th Cir. 1996).
[110] *Baqer v. St. Tammany Par. Gov't*, No. CV 20-980, 2025 WL 948167, at *9 (E.D. La. Mar. 28, 2025).
[111] *Martinez v. Harris Cnty. Jail*, 71 F.3d 876 (5th Cir. 1995).

17

the Western District of Louisiana denied prison officials' motion for summary judgment on a pretrial detainee's conditions of confinement claim when the court could not discern a legitimate rationale for depriving a pretrial detainee of outside recreation opportunities. The court reasoned that the officials had not demonstrated that denying the pretrial detainee outdoor recreation was related to a legitimate government purpose, as the detainee had committed no disciplinary infractions and did not otherwise present a security risk.[112]

In this matter, Plaintiff claims that both JPSO formal policies and its de facto policies evidenced by the deputies' pervasive acts unreasonably denied him outdoor recreation time. Defendants filed a motion for summary judgment on Plaintiff's conditions of confinement claims. As Defendants are moving for summary judgment on Plaintiff's conditions of confinement claims, Defendants must demonstrate there is no genuine dispute as to any material fact *and* they are entitled to judgment as a matter of law.[113] Defendants as movants can satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of Plaintiff's conditions of confinement claims, or (2) demonstrating there is no evidence in the record to establish an essential element of Plaintiff's conditions of confinement claims.[114] Defendants in this case chose to meet their summary judgment burden by pointing to evidence in the record negating an essential element of Plaintiff's conditions of confinement claim. To support this argument, Defendants provided a statement of undisputed material facts and attached the Plaintiff's grievances and JPSO's responses thereto.[115] In response to Defendants'

---

[112] *Burns v. Smith*, No. CIV.A.08-0428, 2009 WL 2825322, at *9 (W.D. La. Sept. 2, 2009).
[113] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[114] *Id.* at 331-32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987).
[115] R. Docs. 46-6, 46-7, 46-8, 60-4, 60-5, 60-6, 60-7, 60-8, 60-9, 60-10, 60-11, 60-12, 60-13.

motion, Plaintiff did not specifically admit or deny any of Defendants' statements of fact but did provide a "Declaration of Steven Jay Sencial."[116] As a result, the court will assume the facts as stated by the Defendants are true for the purposes of this motion and rely on the grievances, responses, and Plaintiff's declaration to determine whether Defendants have met their burden of demonstrating that evidence in the record negates an essential element of Plaintiffs conditions of confinement claims.

Not only must Defendants show that no genuine disputes of material fact exist, but they also must demonstrate they are entitled to judgment as a matter of law. Defendants argue they are entitled to judgment as a matter of law on Plaintiff's conditions of confinement claims, but they have cited an incorrect analysis for evaluating these claims. Defendants incorrectly cite the standard for episodic acts or omissions claims as whether the official "acted with subjective deliberate indifference" to a violation of the pretrial detainee's constitutional rights.[117] The correct analysis is whether the Plaintiff has shown: (1) "a rule or restriction or. . . the existence of an identifiable intended condition or practice. . . [or] that the jail official's acts or omissions were sufficiently extended or pervasive; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of [plaintiff's] constitutional rights."[118]

The Court will now examine the evidence in the record to determine whether the Defendants have shown it is an undisputed fact that the Plaintiff cannot establish an element of his cause of action. In his grievances, Plaintiff states he was denied outdoor recreation for numerous periods of time; Defendants' responses include JPSO's stated

---

[116] R. Doc. 53-1.
[117] R. Doc. 60 at pp. 14-15.
[118] *Duvall v. Dallas Cnty.*, 631 F.3d 203, 207 (5th Cir. 2011).

reasons for Plaintiff's outdoor recreation time being denied. The attached grievances and responses reflect the following:

- Plaintiff's First and Second grievances: Plaintiff was denied outdoor recreation for 20 days from July 5, 2022 to July 25, 2025[119] and for 27 days from August 19, 2022 to September 15, 2022.[120] Captain Bordelon marked these grievances as founded, clearly revealing he saw no legitimate reason for the denials.[121] Captain Bordelon acknowledged in his step two response to Plaintiff's second grievance that on two occasions Plaintiff was not issued an armband that would allow him to exercise outdoors after he was removed from suicide watch and that he had been denied outdoor yard time during the periods covered by Plaintiff's first and second grievances.[122] No policy regarding providing armbands after removal from suicide watch appears in the Inmate Rules, Regulations, and All Procedures attached to the motion for summary judgment.[123] Plaintiff's first two grievances and the accompanying responses demonstrate that he was subject to a consistent and pervasive pattern of prison officials denying him outdoor recreation time due to the prison's failure to provide him an armband after he was removed from suicide watch. Sgt. Rabb stated in response to Plaintiff's third grievance that JPSO policy requires inmates to fill out an "Inmate Request Form" in order to obtain a new armband after removal from suicide

---

[119] R. Doc. 46-6 at p. 1.
[120] R. Doc. 46-7.
[121] *Id.*
[122] *Id.* at p. 8.
[123] R. Doc. 60-3.

watch,[124] but no such policy appears in the Inmate Rules, Regulations, and All Procedures attached to the motion for summary judgment.[125] As a result, Plaintiff also was subject to a pervasive pattern of prison officials requiring that he request a new armband after he was removed from suicide watch—rather than the armband being returned to him without request—that denied him outdoor recreation.

- Plaintiff's Third grievance: 41 days from September 15, 2022 to October 26, 2022.[126] Captain Bordelon found this grievance founded, again clearly revealing he saw no legitimate reason for the denial. He stated in his step two response to this grievance that the inmates in Plaintiff's living areas had received outdoor recreation time on multiple occasions,[127] but he acknowledged that during this period inmates were denied outside recreation time because of personnel shortages and construction on the prison's security door system.[128] While the number of days Plaintiff was denied outdoor recreation during this period is unclear, Plaintiff's grievance and the accompanying responses demonstrate a consistent and pervasive pattern of prison officials denying Plaintiff outdoor recreation time due to personnel shortages. No such policy appears in the Inmate Rules, Regulations, and All Procedures attached to the motion for summary judgment. Plaintiff also was denied outdoor recreation because of

---

[124] R. Doc. 60-6 at p. 3.
[125] There is a section in the policy entitled "Request Forms" but it includes no reference to inmates requesting a new armband after removal from suicide watch. R. Doc. 60-3 at p. 16.
[126] R. Doc. 46-8 at p. 1.
[127] *Id.* at p. 10.
[128] *Id.*

21

construction on the prison's security door system. There is a policy in the Inmate Rules, Regulations, and All Procedures that inmates will be on lockdown during "Maintenance Repairs."[129]

- Plaintiff's Fourth grievance: 1 day on February 17, 2023.[130] Sgt. Rabb acknowledged in the first step response to this grievance that the prison cancelled outdoor recreation time on this day due to the presence of private contractors on the premises.[131] There is no policy in the Inmate Rules, Regulations, and All Procedures regarding inmates not being provided outdoor recreation due to contractors being on the premises.[132] This grievance and Sgt. Rabb's response demonstrate a consistent and pervasive practice denying Plaintiff outdoor recreation time due to the presence of contractors on prison grounds.

- Plaintiff's Fifth grievance: 21 days from February 22, 2023 to March 15, 2023.[133] Sgt. Rabb disputes the grievance only to the extent he states that on March 10, 2023, Plaintiff was given 30 minutes of outdoor recreation time.[134] Sgt. Rabb acknowledged in the first step response to this grievance that the prison cancelled outdoor recreation time during this period due to the presence of contractors on the premises.[135] There is no policy in the Inmate Rules, Regulations, and All Procedures regarding inmates not being

---

[129] R. Doc. 60-3 at p. 24.
[130] R. Doc. 60-7 at p. 1.
[131] *Id.* at p. 2.
[132] R. Doc. 60-3.
[133] R. Doc. 60-8 at p. 1.
[134] *Id.* at p. 2.
[135] *Id.* at p. 2.

provided outdoor recreation due to contractors on the premises.[136] Sgt. Rabb's response once again demonstrates a consistent and pervasive pattern of denying Plaintiff outdoor recreation time due to the presence of contractors on prison grounds.

- Plaintiff's Sixth grievance: 1 day on March 24, 2023.[137] Sgt. Rabb acknowledged in the first step response to this grievance that Plaintiff was denied recreation yard access on this date because his armband had been tampered with and was being held together by a rubber band; Sergeant Rabb cited the prison policy providing that inmates who remove their armbands will be subject to discipline and not eligible for outdoor activity.[138] Plaintiff denies that he tampered with his armband.[139] The Rule Book provides that "[a]ny inmate who removes their armband for any reason shall have disciplinary action instituted against him/her" and "any inmate without an armband will not be allowed . . . recreational privileges."[140] Officer Smith also provided a response saying Plaintiff was denied outdoor exercise time because of his mohawk haircut.[141] The JPSO Inmate Rule Book requires inmates to have "no longer than shoulder hair length. . . or any hair style[s] that are not standard or the norm."[142] Plaintiff denies that his hair style violates this policy. Accordingly, Plaintiff was subject to formal prison

---

[136] R. Doc. 60-3.
[137] R. Doc. 60-9 at p. 1.
[138] *Id.* at p. 2.
[139] *Id.* at p. 1.
[140] R. Doc. 60-3 at p. 4.
[141] R. Doc. *60-9* at p. 7.
[142] R. Doc. 60-3 at p. 6.

policies regarding his armband and his hair style that denied him outdoor recreation.

- Plaintiff's Seventh grievance: For "over a month" from "March [2023] to April [2023]."[143] Sgt. Rabb acknowledged in the first step response to Plaintiff's grievance that the prison had been unable to follow the ordinary recreation schedule during this period due to the presence of contractors on the premises and adverse weather conditions.[144] There is a policy in the Inmate Rules, Regulations, and All Procedures providing there shall be no outdoor exercise based on "weather conditions."[145] Sgt. Rabb further stated that Plaintiff could have participated in outdoor recreation on March 24, 2023 had he not tampered with his armband.[146] Sgt. Rabb's response once again demonstrates a pattern of pervasive acts denying Plaintiff outdoor recreation, on these occasions due to the presence of contractors on prison grounds, as well as the policies prohibiting tampering with an armband and outdoor exercise during inclement weather.

- Plaintiff's Eighth Grievance: 1 day on June 30, 2023.[147] Sgt. Rabb stated in the first step response to Plaintiff's grievance that he asked the inmates in Plaintiff's living area if any of them wanted to participate in outdoor recreation, but only the inmates of one cell, which did not include Plaintiff, expressed a desire for recreation time.[148] Plaintiff claims Sgt. Rabb did not

---

[143] R. Doc. 60-10 at p. 1.
[144] *Id.* at p. 2.
[145] R. Doc. 60-3 at p. 7.
[146] R. Doc. 60-10 at p. 2.
[147] R. Doc. 60-11 at p. 1.
[148] *Id.* at p. 2.

ask him whether he wanted recreation time and that Sgt. Rabb ignored his request to participate.[149]

- Plaintiff's Ninth Grievance: 1 day on July 14, 2023.[150] Lt. Morris stated in his first step response to Plaintiff's grievance that Plaintiff lost recreation privileges for his violation of the prison's haircut policy.[151] The Inmate Rules, Regulations, and All Procedures policy requires inmates to have "no longer than shoulder hair length . . . or any hair style[s] that are not standard or the norm."[152] Lt. Morris does not specify how Plaintiff violated the haircut policy and Plaintiff denies that he did. Plaintiff claims he should not have been denied recreation time for this violation.[153] Accordingly, Plaintiff was subject to a formal prison policy that denied him outdoor recreation time because of his hair style.

To prevail at the summary judgment stage, Defendants must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[154] To successfully bring a conditions of confinement claim, a plaintiff must prove: (1) "a rule or restriction or. . .the existence of an identifiable intended condition or practice. . . [or] that the jail official's acts or omissions were sufficiently extended or pervasive; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of [plaintiff's] constitutional rights."[155]

---

[149] *Id.* at p. 1.
[150] *Id.*
[151] R. Doc. 60-13 at p. 2.
[152] R. Doc. 60-3 at p. 6.
[153] R. Doc. 60-13 at p. 1.
[154] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[155] *Duvall v. Dallas Cnty.*, 631 F.3d 203, 207 (5th Cir. 2011).

To determine whether conditions are excessive to a legitimate government interest, the Court must consider the totality of the circumstances, such as "the size of the detainee's living space, the length of the confinement, the amount of time spent in the confined area each day, and the opportunity for exercise."[156] The Fifth Circuit in *Ruiz v. Estelle* added that these factors "together with the inmate's physical and other needs must be determined on the facts of each case and the evidence in each case should support the existence of any health hazard under the specific circumstances involved."[157] For example, in order to determine whether the denial of outside yard exercise is a constitutional violation, the Court must consider whether it is an undisputed fact that Plaintiff had ample opportunity to enjoy indoor activity, such as having a cell large enough for him to exercise indoors.[158]

Some of the formal policies cited by Plaintiff or Defendants are reasonably related to a legitimate governmental objective, including the requirement that the prisoner have an intact armband,[159] that there be no outdoor exercise during adverse weather conditions,[160] and that there be no outside exercise during Maintenance Repairs.[161] However, there are disputed issues of fact with respect to the totality of circumstances of Plaintiff's confinement that must be considered to determine whether other policies or pervasive acts are legitimate or excessive, such as failing to issue Plaintiff a new armband after he was removed from suicide watch, denying him outdoor recreation time due to the presence of contractors on the premises, denying Plaintiff outdoor recreation because he

---

[156] *Ferguson v. Cape Girardeau Cnty.*, 88 F.3d 647, 650 (8th Cir. 1996).
[157] 679 F.2d 1115 (5th Cir. 1982).
[158] *See Lewis v. Smith*, 277 F.3d 1373, 2001 WL 1485821, at *1 (5th Cir. 2001).
[159] R. Doc. 60-3 at p. 4.
[160] *Id.* at p. 7.
[161] R. Doc. 60-3 at p. 24.

26

violated the hair style policy, and denying him outdoor recreation based on personnel shortages. Defendants correctly argue that "[n]either the Supreme Court nor the Fifth Circuit Court of Appeals has held that pretrial detainees have a per se constitutional right to out-of-cell exercise or recreation," but Defendants must address the totality of the circumstances of Plaintiff's confinement that show the prison policies or pervasive acts that denied Plaintiff outdoor recreation were reasonably related to a legitimate governmental purpose and were not excessive to that purpose.[162] Neither Defendants' statement of undisputed material facts nor the grievances and responses include any evidence with respect to the totality of Plaintiff's ability or opportunities to exercise indoors, the size of plaintiff's cell, the duration of his confinement, the amount of time Plaintiff spent locked in his cell each day, or any of the other circumstances surrounding Plaintiff's pretrial detention.

In addition, Defendants have failed to provide legitimate rationales for failing to issue Plaintiff a new armband after removing him from suicide watch, denying him outdoor recreation based on the presence of contractors on the premises, denying the Plaintiff outdoor recreation based on his violation of the hair style policy, or denying him outdoor recreation based on personnel shortages. The Fifth Circuit has declined to dismiss a plaintiff's conditions of confinement claim when the defendants failed to explain the rationale for imposing certain restrictions.[163] In response to Plaintiff's grievances in which Plaintiff complained of this armband policy, Captain Bordelon acknowledged that the prison erred in neglecting to replace Plaintiff's armband and that

---

[162] R. Doc. 46-1 at p. 16.
[163] *Martinez v. Harris Cnty. Jail*, 71 F.3d 876 (5th Cir. 1995).

this failure resulted in improperly restricting Plaintiff's outdoor recreation time.[164] Captain Bordelon also acknowledged the presence of contractors on the premises and personnel shortages were not rationally related reasons for denying outdoor recreation. Furthermore, Defendants have not offered evidence showing that Plaintiff presented a security threat. Defendants fail to explain these circumstances reasonably required the denial of Plaintiff's outdoor recreation. Accordingly, the Defendants have not shown evidence in the record negating Plaintiff's ability to establish that the policies and pervasive acts denying Plaintiff outdoor recreation were not reasonably related to a legitimate governmental objective.

Even if Defendants had demonstrated that no disputed issues of material fact exist, they still would not have demonstrated that they are entitled to judgment as a matter of law. As noted above, to successfully bring a conditions of confinement claim, a plaintiff must prove: (1) "a rule or restriction or. . . the existence of an identifiable intended condition or practice. . . [or] that the jail official's acts or omissions were sufficiently extended or pervasive; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of [plaintiff's] constitutional rights."[165] Defendants must either submit affirmative evidence that negates an essential element of the nonmovant's claim, or demonstrate there is no evidence in the record to establish an essential element of the nonmovant's claim. However, Defendants argue they are entitled to judgment as a matter of law under the analysis used for episodic acts or omissions claims, which differs significantly from the analysis for conditions of confinement claims in that it requires plaintiffs to establish that prison officials "acted with subjective

---

[164] R. Doc. 46-7 at p. 8.
[165] *Duvall v. Dallas Cnty.*, 631 F.3d 203, 207 (5th Cir. 2011).

deliberate indifference" to a violation of constitutional rights.[166] Defendants have not established they are entitled to judgment as a matter of law when they have not cited the correct legal elements of Plaintiff's conditions of confinement claim. Accordingly, even if issues of material fact did not exist, Defendants still would have failed to establish that they are entitled to judgment as a matter of law.

Disputed issues of material fact exist as to whether the polices and pervasive acts that denied Plaintiff outdoor recreation time were reasonably related to a legitimate governmental rationale or instead were excessive to that purpose. In addition, Defendants have failed to demonstrate they are entitled to judgment as a matter of law under the applicable legal standard. Accordingly, the Court will deny Defendant's motion for summary judgment with respect to Plaintiff's conditions of confinement claim against Sheriff Lopinto in his official capacity and Sergeant Rabb and Officer Smith in their individual capacities.

### III. All defendants individually, and Sheriff Lopinto in his official capacity, are entitled to summary judgment as a matter of law on Plaintiff's episodic acts claims.

Defendants seek summary judgment on Plaintiff's episodic act or omission claims asserted against Sergeant Rabb, Officer Smith, and Sheriff Lopinto in their individual capacities and against Sheriff Lopinto in his official capacity. Defendants argue Plaintiff failed to submit any evidence showing that Defendants were aware Plaintiff faced a substantial risk of harm.[167]

An episodic acts or omissions claim may be brought against defendants in their individual or official capacities. An episodic act or omissions claim "faults specific jail

---

[166] *Flores v. Cnty. of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997).
[167] R. Doc. 60 at pp. 17-20.

officials for their acts or omissions."[168] In these claims, an actor is "interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission."[169] The relevant question becomes "whether that official breached his constitutional duty to tend to the basic human needs of persons in his charge," and intentionality is no longer presumed.[170]

Plaintiff brings episodic acts/omissions claims against all Defendants. As noted above, Plaintiff submitted multiple grievances arguing that various prison officials acted to deny him outdoor recreation time and that Sheriff Lopinto was "responsible for all aspects of [the] operations at the Jefferson Parish Correctional Center. . .[as] a final policy maker[.]"[171] As Plaintiff challenges the particular acts of individual officers and "then points derivatively" to prison policies that caused the acts, Plaintiff brings episodic acts or omissions claims against all Defendants in their individual capacities and against Sheriff Lopinto in his official capacity.

Courts employ different standards for episodic acts or omissions claims depending on whether the plaintiff brings claims against an official in his or her individual capacity or official capacity.[172] To find an official liable in his or her individual capacity, a pretrial detainee must establish that the official "acted with subjective deliberate indifference" to a violation of his constitutional rights.[173] Generally, subjective deliberate indifference is

---

[168] *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009).
[169] *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997).
[170] *Estate of Henson v. Wichita Cnty.*, 795 F.3d 456, 463 (5th Cir. 2015).
[171] R. Doc. 4-2 at p. 2.
[172] *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999).
[173] *Flores v. Cnty. of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997).

shown only when "the official knows of and disregards an excessive risk to inmate health or safety," and "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[174]

To find an official liable in his or her official capacity, "a pre-trial detainee must establish that an official acted with subjective deliberate indifference" *and* that the "act resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference to the detainee's constitutional rights."[175] The objective deliberate indifference standard "considers not only what the policy maker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights."[176]

Defendants argue they are entitled to summary judgment on this issue because Plaintiff failed to submit evidence establishing that any of the Defendants had subjective knowledge of any risk of serious harm to him.[177] Defendants further argue the grievances and responses establish that the Defendants did not evidence a deliberate disregard for a substantial risk of serious harm to Plaintiff, or that any Defendant disregarded that risk by failing to take reasonable measures to prevent it.[178] Defendants further argue they are entitled to summary judgment because Plaintiff failed to submit any evidence establishing

---

[174] *Estate of Henson v. Krajca*, 440 Fed.Appx. 341, 343 (5th Cir. 2011).

[175] *Scott v. Moore*, 114 F.3d 51, 54 (5th Cir. 1997); *Corley v. Prator*, 290 F. App'x 749, 753 (5th Cir. 2008)(affirming a district court's granting of summary judgment on a Plaintiff's episodic act claim against a defendant in his official capacity because the plaintiff failed to raise a fact issue as to the subjective deliberate indifference of any individual.).

[176] *Corley v. Prator*, 290 Fed.Appx. 749, 750 (5th Cir. 2008) (citing *Lawson v. Dallas Cnty.*, 286 F.3d 257, 264 (5th Cir. 2002)).

[177] R. Doc. 60 at pp. 19-20.

[178] *Id.* at p. 20.

that any policy of the Sheriff was the moving force behind any alleged constitutional violations.[179]

Plaintiff has not alleged any facts or offered any evidence to show that Defendants acted with subjective deliberate indifference. For Plaintiff to succeed on his episodic acts or omissions claims, against all Defendants individually and against Sheriff Lopinto in his official capacity, Plaintiff must be able to establish that prison officials acted with subjective deliberate indifference.[180] To establish this element, Plaintiff must show the Defendants knew of and disregarded an excessive risk to his health or safety and that the officers were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and must also draw the inference.[181] Plaintiff offers not a scintilla of evidence that prison officials were aware that Plaintiff faced a substantial risk of serious physical or psychological harm due to his lack of outdoor recreation time. The record does not reflect that the Defendants were aware Plaintiff suffered any type of physical or psychological harm, let alone a "serious harm,"[182] or that they were aware of facts from which such an inference could be drawn and they actually drew the inference. Accordingly, the Defendants have established that Plaintiff will be unable to establish an essential element of his episodic acts claim because he cannot show that prison officials acted with deliberate indifference to a serious risk of harm to him. Accordingly, Defendants are entitled to summary judgment on these claims.

---

[179] *Id.* at pp. 23-24.

[180] *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999).

[181] *Estate of Henson v. Krajca*, 440 Fed.Appx. 341, 343 (5th Cir. 2011).

[182] *Corley v. Prator*, 290 F. App'x 749, 753 (5th Cir. 2008)(affirming a district court's granting of summary judgment on a Plaintiff's episodic act claim against a defendant in his official capacity because the plaintiff failed to raise a fact issue as to the subjective deliberate indifference of any individual.); *Morel v. Lopinto, No. CV 19-12422, 2022 WL 110496*, at *9 (E.D. La. Jan. 12, 2022)(granting summary judgment for defendant on a plaintiff's episodic acts claim when the plaintiff did not offer "a scintilla of evidence that [defendants] knew of a substantial risk of harm to [plaintiff].").

## CONCLUSION

**IT IS ORDERED** that Defendants' Motion for Summary Judgment that Plaintiff failed to exhaust his administrative remedies as to his first grievance is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on Plaintiff's conditions of confinement claims against Sheriff Lopinto in his official capacity and Sergeant Rabb and Officer Smith in their individual capacities is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on Plaintiff's episodic acts claims against Sergeant Rabb, Officer Smith, and Sheriff Lopinto in their individual capacities and against Sheriff Lopinto in his official capacity is **GRANTED**.

**New Orleans, Louisiana, this 22nd day of June, 2026.**[183]

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[183] On May 20, 2026, Plaintiff filed a motion to issue subpoenas for trial. R. Doc. 67. The trial in this matter has not been set. The motion is denied without prejudice to Plaintiff refiling the motion closer to the trial date.

33